UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALVA WILHELM, et al.,

            Plaintiffs,                            **Case No. 2:03-cv-786**
                                                   **JUDGE GREGORY L. FROST**
       **v.**                                     **Magistrate Judge Mark R. Abel**

KNOX COUNTY, OHIO, et al.,

            Defendants.

## OPINION AND ORDER

This matter comes before the Court for consideration of the following sets of filings:

(1) a motion for summary judgment (Doc. # 54) filed by the City of Mount Vernon, Mount Vernon Ohio Police Department, Jeff Jacobs, and Troy Glazier ("the Mount Vernon Defendants"), a memorandum in opposition (Doc. # 60) filed by Bradley Wilhelm, and a reply (Doc. # 61) filed by the Mount Vernon Defendants;

(2) a motion for summary judgment (Doc. # 74) filed by College Township, James Samuell, and Richard Dzik ("the College Defendants"), a memorandum in opposition (Doc. # 94) filed by Bradley Wilhelm, and a reply (Doc. # 98) filed by the College Defendants; and

(3) a motion for summary judgment (Doc. # 78) filed by Knox County, Knox County Sheriff David Barber, Kevin Carpenter, and Mark Rutherford ("the Knox County Defendants"), a memorandum in opposition (Doc. # 95) filed by Alva Wilhelm and Bradley Wilhelm, and a reply (Doc. # 97) filed by the Knox County Defendants.

For the reasons that follow, this Court **GRANTS IN PART** and **DENIES IN PART** the

motion for summary judgment filed by the Mount Vernon Defendants (Doc. # 54), the motion

for summary judgment filed by the College Defendants (Doc. # 74), and the motion for summary

judgment filed by the Knox County Defendants (Doc. # 78).

## I. Background

On September 2, 2002, Alva Wilhelm and his adult son, Bradley Wilhelm, were mowing

the grass and burning trash on their farm in Knox County, Ohio. Defendants William Baer,

James Samuell, and Richard Dzik–all volunteer firefighters for the College Township and

Monroe Township Fire Department–responded to a reported fire at the scene, came onto the

property, and extinguished the fire. A conflict ensued in which Bradley Wilhelm allegedly

resisted the firefighting by trying to hit the firefighters multiple times with a tractor he was

driving. This led fireman Baer to contact the Knox County Sheriff's Department.

Defendants Kevin Carpenter and Mark Rutherford, a sergeant and a deputy in the Knox

County Sheriff's Department, and Defendants Jeff Jacobs and Troy Glazier, officers in the

Mount Vernon Police Department, subsequently arrived at and proceeded onto the Wilhelm

property. Alva accompanied Carpenter to the tractor in which Bradley was sitting, and when

Carpenter threw open the tractor door, it hit Alva in the head, injuring him. Things continued to

deteriorate, and after Alva struck Carpenter by accident or intent, the officer arrested, charged,

and initiated the prosecution of Alva. Alva alleges that Carpenter threw him against the tractor

door, to the ground, and into a police cruiser. As a result, Alva contends, he lost consciousness,

suffered both a seizure and a heart attack, and incurred debilitating emotional distress.

Bradley Wilhelm in turn alleges that following his father's arrest, he got off his tractor

only to be quickly handcuffed and then surrounded by Carpenter, Rutherford, Jacobs, Glazier,

2

Baer, Samuell, and Dzik. He asserts that these seven defendants proceeded to push and pull him back and forth for several minutes, resulting in injuries requiring medical treatment. Similar to Alva, Bradley alleges that Rutherford and Carpenter charged and prosecuted him without probable cause, that he was subjected to excessive force during his arrest, and that he was unlawfully detained.

Criminal charges were filed and Bradley Wilhelm was convicted of three counts of intimidation, but acquitted of felony assault charges. The convictions were later overturned on appeal due to *ex parte* communications between the judge and jury involved. Alava Wilhelm was also convicted of misdemeanor assault in separate criminal proceedings.

Alva and Bradley[1] instituted the present action on September 2, 2003. (Doc. # 1.) In addition to containing a claim under 42 U.S.C. § 1983 (Doc. # 1, at 6 ¶¶ 19-21), their Complaint asserts state law intentional tort claims for false arrest (Doc. # 1, at 6 ¶¶ 22-23), malicious prosecution (Doc. # 1, at 6 ¶¶ 24-25), abuse of process (Doc. # 1, at 6 ¶¶ 26-27), assault and battery (Doc. # 1, at 7 ¶¶ 28-29), and intentional infliction of emotional distress[2] (Doc. # 1, at 7

---

[1] Alva and Bradley Wilhelm are the remaining complaining parties in this case. Former plaintiff Randy Wilhelm withdrew as a party to this litigation in July 2004. (Docs. # 44, 45.)

[2] The Court notes that the Complaint is unclear as to whether Plaintiffs are asserting a claim *only* for the intentional infliction of emotional distress or *also* a claim for the negligent infliction of emotional distress. The relevant section of the Complaint is entitled "**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**," but then clouds the issue by providing in its entirety:

> 30. Paragraphs 1-29 are realleged and incorporated herein[.]
> 31. Defendants committed intentional and negligent infliction of
> emotional distress.

(Doc. # 1, at 7.) Thus, it appears that the pleading either presents one cause of action while referencing another potential-but-not-asserted cause of action, or presents two causes of action.

3

¶¶ 30-31), and includes a request for punitive damages (Doc. # 1, at 7).

On July 15, 2004, College Township moved for judgment on the pleadings in regard to the intentional tort claims and the request for punitive damages. (Doc. # 46.) In a September 16, 2004 Opinion and Order (Doc. # 52), the Court dismissed with prejudice the intentional tort claims of false arrest, malicious prosecution, abuse of process, assault and battery, and intentional infliction of emotional distress against College Township. The Court also held that Plaintiffs could not recover punitive damages from College Township.

All of the remaining defendants have filed summary judgment motions. (Docs. # 54, 74, 78.) Having been fully briefed and certification issues with the related supporting transcripts having been resolved, the motions are now ripe for adjudication.

## II. Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment here if Plaintiffs, the nonmoving parties who have the burden of proof at trial, fail to

---

Only the College Defendants explicitly seek summary judgment on the negligent infliction of emotional distress theory, and Bradley's response ignores that cause of action altogether. The Court is therefore left with an unclear pleading and two of three summary judgment motions that do not explicitly address the potential claim. Guided by Plaintiffs' apparent abandonment of the negligence claim, the Court shall treat the pleading as not raising the cause of action for purposes of the summary judgment motions. The Court shall seek clarification of the claims at the final pretrial conference pursuant to Fed. R. Civ. P. 16 and, if Plaintiffs assert that they intended this claim and wish to proceed on it, the Court shall entertain argument at that time on whether the briefing indicates that such a claim has in fact been abandoned and will proceed accordingly.

4

make a showing sufficient to establish the existence of an element that is essential to their case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Plaintiffs, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

### III.  The Mount Vernon Defendants

As a threshold matter, the Court notes that the Mount Vernon Defendants have moved for summary judgment on all claims asserted by Plaintiff Alva Wilhelm. Ava Wilhelm has responded by withdrawing all claims set forth in the Complaint against these defendants. (Doc. # 60, at 1.) Because there can be no dismissal under Fed. R. Civ. P. 41(a) within this context, the Court shall construe Alva Wihelm's action as a concession to summary judgment and **GRANT** judgment as a matter of law for the Mount Vernon Defendants on these claims.

This leaves the Court with the six claims asserted by Bradley Wilhelm against the Mount Vernon Defendants. Bradley's first count is a federal claim under 42 U.S.C. § 1983, which

5

provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, in order to prevail on his § 1983 claim, Bradley must show that, while acting under color of state law, the Mount Vernon Defendants deprived him of a right secured by the Federal Constitution or laws of the United States.  *See Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir. 1992).

Bradley also asserts a state law claim for false arrest, which under Ohio law consists of " '(1) the intentional detention of the person and (2) the unlawfulness of the detention.' " *Radvansky*, 395 F.3d at 315 (quoting *Hodges v. Meijer, Inc.,* 129 Ohio App.3d 318, 322, 717 N.E.2d 806, 809 (1998)).  He then asserts state law claims for malicious prosecution and abuse of process.  Under Ohio law, the tort of malicious prosecution consists of "(1) malice in instituting or continuing a the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused."  *Trussell v. General Motors Corp.*, 53 Ohio St. 3d 142, 146, 559 N.E.2d 732, 736 (1990).  *See also Radvansky*, 395 F.3d at 316 (citing *Trussell*).  The Ohio Supreme Court has explained that the tort of malicious prosecution provides a remedy when a proceeding is instituted without probable cause, while the related but distinguishable tort of abuse of process provides a remedy "for 'cases in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed.' " *Yaklevich v. Kemp,*

*Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St. 3d 294, 297, 626 N.E.2d 115, 118 (1994)(quoting

Prosser & Keeton, The Law of Torts (5 Ed. 1984) 897, Section 121).  That court has further

explained that

> the three elements of the tort of abuse of process are: (1) that a legal proceeding
> has been set in motion in proper form and with probable cause; (2) that the
> proceeding has been perverted to attempt to accomplish an ulterior purpose for
> which it was not designed; and (3) that direct damage has resulted from the
> wrongful use of process.

*Id*. at 298, 626 N.E.2d at 118.

In a single count, Bradley then asserts the state law claims of assault and battery.  Ohio

law provides that the tort of assault consists of

> the willful threat or attempt to harm or touch another offensively, which threat or
> attempt reasonably places the other in fear of such contact.  The threat or attempt
> must be coupled with a definitive act by one who has the apparent ability to do
> the harm or to commit the offensive touching. An essential element of the tort of
> assault is that the actor knew with substantial certainty that his or her act would
> bring about harmful or offensive contact.

*Stevens v. Provitt*, No. 2002-T-0076, 2003 WL 23097088, at *3 (Ohio App. 11 Dist. Dec. 31,

2003) (quoting *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148, 1154

(1993)).  The tort of battery exists when a person acts with the intent to cause a harmful or

offensive contact and such a harmful contact actually results.  *Love v. City of Port Clinton*, 37

Ohio St. 3d 98, 99, 524 N.E.2d 166, 167 (1988) (citing Restatement of the Law 2d, Torts (1965)

25, Section 13).

Finally, in regard to Bradley's final claim for the intentional infliction of emotional

distress, it is well settled that under Ohio law that "[o]ne who by extreme and outrageous

conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 6 Ohio St. 3d 369, 453 N.E.2d 666, syllabus (1983). The Sixth Circuit has explained the tort:

> In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff in Ohio must establish: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' 3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'"

*Williams v. York Int'l Corp.*, 63 Fed. Appx. 808, 813 (6th Cir. 2003) (quoting *Pyle v. Pyle*, 11 Ohio App. 3d 31, 463 N.E.2d 98, 103 (1983) (internal citations omitted in *Williams*)). The standard in Ohio imposes liability only where " 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' " *Torres v. White*, 46 Fed. Appx. 738, 755 (6th Cir. 2002) (quoting *Yeager*, 6 Ohio St. 3d at 375, 453 N.E.2d at 671 (citation to Restatement (Second) of the Law, Torts 71, § 46(1) cmt. d (1965) eliminated)). The standard has also been described as requiring facts indicating conduct that a reasonable person could conclude is "beyond all possible bounds of decency." *Cf. Liadis v. Sears, Roebuck and Co.*, 47 Fed. Appx. 295, 299 (6th Cir. 2002) (declining to impose liability for intentional infliction of emotional distress when facts do not rise to quoted standard) (quoting *Yeager,* 6 Ohio St. 3d at 374-75, 453 N.E.2d at 671)); *Torres*, 46 Fed. Appx. at 756-57 (same).

The Mount Vernon Defendants move for summary judgment on the grounds that Bradley

8

is unable to produce any evidence to substantiate any of the foregoing claims.  To support this argument, the Mount Vernon Defendants point to Bradley's own deposition testimony.  Bradley admitted under oath that he did not know who handcuffed him (Bradley Dep. at 104), that he did not know whether Jacobs or Glazier placed him under arrest that day (*Id*. at 104), that he was unaware whether either man had filed criminal charges against him (*Id*. at 105), and that he could not say whether either man touched or assaulted him (*Id*. at 107-08).  Further, as the Mount Vernon Defendants point out, Alva Wilhelm testified in his deposition that he "did not see what happened" concerning Bradley's arrest.  (Alva Wilhelm Dep. at 165.)

Bradley disagrees with the Mount Vernon Defendants, offering an affidavit in which he states that "I could not see what each of the seven men were doing concerning the assault on myself, but, I do know that the two police officers from Mt. Vernon participated in the assault on me." (Doc. # 60, Ex. A, Bradley Aff. at 2 ¶ 9; Doc. # 61.)  He does not elaborate on the basis for this asserted knowledge, but adds that "[w]hen I testified at my deposition I stated that 'I can't see what is going on behind my back.' " (*Id*. at ¶ 10.)  The affidavit as a whole asserts the participation of Jacobs and Glazier.

Bradley has also submitted an affidavit from Machael Hartsook in which she describes herself as an eyewitness to the September 2, 2002 events.  (Docs. # 60, 61, Ex. B, Hartsook Aff., at 1 ¶¶ 1-2.)  Hartsook asserts in this document that she observed Defendant Carpenter handcuff Bradley, followed by seven men–including two Mount Vernon police officers–"each and every one" of whom pushed and shoved Bradley from "one to another."  (*Id*. at 2-3 ¶¶ 11-12, 14.)  Hartsook's affidavit stands in stark contrast to a portion of her deposition, where Hartsook initially testified under oath that although there was pushing by those individuals who had

surrounded Bradley, she clarified that she could *not* say that every single individual actually pushed Bradley.  (Hartsook Dep. at 61, 90.)  In response to later questioning, however–and in a portion of the deposition transcript that the Mount Vernon Defendants neglect to reference–Hartsook specifically testified that she saw two Mount Vernon police officers shove Bradley.  (*Id*. at 93.)

The foregoing depositions and affidavits lead to two conclusions.  The first conclusion is that to the extent it contradicts his deposition testimony, Bradley's self-serving affidavit fails to create a genuine issue of material fact.  It is well settled that a plaintiff cannot evade summary judgment by submitting his own affidavit, filed in response to a summary judgment motion, that contradicts his earlier deposition testimony.  *Penny v. United Parcel Post*, 128 F.3d 408, 417 (6th Cir. 1997) (citing *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986)).  The Sixth Circuit has phrased the rule in broad terms, stating that "[a] party may not create a factual issue by filing *an* affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony."  *Reid*, 790 F.2d at 460 (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)) (emphasis added).  Thus, it is also settled law that a plaintiff cannot create an issue of fact by submitting a witness' affidavit that contradicts that witness' own prior deposition testimony.  *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 619 (6th Cir. 2001).  By logical extension, then, Bradley cannot contradict his deposition testimony by submitting an affidavit from a witness who was allegedly present for the very events Bradley addresses in his deposition.

Here, Bradley at times testified under oath in his deposition that he could not say that Jacobs and Glazier physically assaulted him; he in fact pinpointed fireman Baer as having

assaulted him. Drawing on one comment–his inability to see behind his back–neither counters his lack of clarity or even denials of the officers' involvement nor leaves the ambiguity that Bradley now claims he is trying to clarify by affidavit. Bradley stated in his deposition that, other than Baer, he did not know "who was doing what" during the alleged attack (Bradley Wilhelm Dep. at 95), although he also says that all seven individuals were involved (*Id*. at 92). Bradley's "all seven" comments appear to be guesswork on his part, and his deposition references to "police officers" appear to indicate Carpenter and Rutherford, not Jacobs and Glazier. (*Id*. at 93). He ultimately conceded at his deposition that he could not say that either Jacobs or Glazier struck him. (*Id*. at 107-08.) Thus, *to the extent Bradley's affidavit contradicts his deposition*, the Court is free to disregard Bradley's affidavit. The Court does just that, but finds that for the reasons expressed below, the Bradley affidavit is ultimately immaterial to the question of whether he evades summary judgment on select claims.

The second conclusion the Court draws from Bradley's evidence is that there is a genuine issue of material fact over whether Jacobs and Glazier committed assault and battery by shoving Bradley. This issue of material fact is created by Machael Hartsook's affidavit. Contrary to the Mount Vernon Defendants' characterization of Hartsook's affidavit, the document does not contradict all of her deposition testimony. Although she could not say that *every* defendant present at the September 2, 2002 incident shoved Bradley, she testified at her deposition *specifically* that two Mount Vernon police officers shoved him (and the only two Mount Vernon officers present were Jacobs and Glazier). Thus, in regard to these two individuals, Hartsook's affidavit is in accord with her deposition. The Court therefore does not disregard the document as an attempt to create a fact issue through self-contradiction.

11

Blanket assertions do not suffice to satisfy the "specific facts showing that there is a genuine issue for trial" required under Fed. R. Civ. P. 56(e). Rather, as the Sixth Circuit has explained, a party opposing summary judgment must present more than "[m]ere conclusory and unsupported allegations, rooted in speculation" to evade summary judgment. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (quoting *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1274 (6th Cir. 1974) (per curiam)). The question before this Court is whether evidence exists that suggests a reasonable inference that Jacobs or Glazier deprived Bradley of a right secured by the Federal Constitution or laws of the United States and/or committed the various state law torts alleged.

There is no evidence that Jacobs or Glazier arrested Bradley or charged him with a crime. Thus, without even addressing the Mount Vernon Defendants' official capacity immunity argument, the Court must conclude that Bradley cannot evade summary judgment in favor of the Mount Vernon Defendants on the false arrest, malicious prosecution, and abuse of process claims. There is some evidence, however, creating a genuine issue of material fact as to whether these officers committed assault and battery in a manner that constitutes outrageous conduct so as to enable a reasonable mind to find in favor of Bradley on his assault and battery claims, his intentional infliction of emotion distress claim, and his overarching § 1983 claim.

This latter conclusion extends *only* to Bradley's action against Jacobs and Glazier in their *individual* capacities. Because suing Jacobs and Glazier in their official capacities is simply seeking to impose liability on Mount Vernon/the Mount Vernon Police Department, Bradley must point to the existence of a policy, custom, or practice responsible for the officers' allegedly improper conduct. *See Monell v. New York City Department of Social Services,* 436 U.S. 658,

12

691 (1978); *Garner v. Memphis Police Dept.*, 8 F.3d 358, 363-64 (6th Cir. 1993). Bradley has failed to identify *any* evidence pointing to *any* underlying policy, custom or practice that caused any claimed constitutional deprivations. There is thus no liability for the City of Mount Vernon and the Mount Vernon Police Department (or Jacobs and Glazier in their official capacities), because these defendants are entitled to summary judgment on the § 1983 claim, the assault and battery claim, and the intentional infliction of emotional distress claim. The only aspects of the § 1983 claim that remain are against Jacobs and Glazier in their *individual* capacities.

The Court notes that Jacobs and Glazier argue in their motion for summary judgment that they cannot be individually liable only because Bradley "failed to produce evidence that [they] subjected him to the unfair deprivation of his rights as is required for a 42 U.S.C. § 1983 claim." (Doc. # 54, at 10.) Because this argument does not raise the defense of qualified immunity, the Court need not determine whether the doctrine applies here.[3]

In summary, the Court **GRANTS IN PART** and **DENIES IN PART** the Mount Vernon Defendants' motion for summary judgment. (Doc. # 54.) The Mount Vernon Defendants are entitled to summary judgment on Alva Wilhelm's claims. Bradley Wilhelm's claims against the

---

[3] The doctrine of qualified immunity operates under certain circumstances to shield from civil liability governmental officials who are performing official duties. *Sinick v. County of Summit*, 76 Fed. Appx. 675, 678-79 (6th Cir. 2003). To determine whether such immunity from suit applies, a court must ask:

> 1) has a constitutional violation occurred; 2) was that right a clearly established right of which a reasonable person would have known; and 3) has the plaintiff alleged sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights"?

*Id*. at 679 (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)). As noted, Jacobs and Glazier do not assert the applicability of this doctrine, but instead solely assert that there are no facts presenting any improper conduct.

13

Mount Vernon Defendants for false arrest, malicious prosecution, and abuse of process fail for want of a predicate action. He has wholly failed to produce evidence upon which a reasonable jury could find in his favor on these claims. Further, no reasonable jury could find against Mount Vernon/Mount Vernon Police Department or Jacobs and Glazier in their *official* capacities on the remaining § 1983, assault and battery, and intentional infliction of emotional distress claims. There can be no contingent liability based on the officers' conduct, because there has been no predicate deprivation of Bradley's constitutional rights related to a city policy, custom, or practice.

Bradley has, however, presented a genuine issue of material fact in regard to his § 1983 claim against Jacobs and Glazier in their *individual* capacities, and against these officers for the state law claims of assault and battery and the intentional infliction of emotional distress. These three claims remain set for trial.

### IV. The College Defendants

Previously, this Court granted College Township's motion for partial judgment on the pleadings (Doc. # 46) in regard to the state law intentional tort claims of false arrest, malicious prosecution, abuse of process, assault and battery, and intentional infliction of emotional distress. College Township now joins the remaining College Defendants in seeking summary judgment on all remaining claims.[4] (Doc. # 74.) Notably, Defendant Baer does not claim that he is

---

[4] The briefing requires two comments. First, the parties curiously devote considerable briefing in the regard to the instant motion in arguing over whether a 42 U.S.C. § 1985(3) conspiracy claim survives summary judgment. Because this claim does not constitute a cause of action asserted in the Complaint, it is not part of this case and the briefing is irrelevant. Further, to the extent that the College Defendants are correct that the Complaint may allege redundant federal as well as the state causes of action for false arrest and malicious prosecution–and

entitled to judgment as a matter of law on Bradley's assault and battery count.  (Doc. # 74, at 1-2.)

The Court begins with the § 1983 claim.  College Township argues that summary judgment is warranted because Bradley has failed to demonstrate the existence of a *Monell* policy, custom, or practice responsible for the firefighters' allegedly improper conduct.  In his memorandum in opposition, Bradley asserts that he has produced evidence of a College Township fire department "[c]ustom and [p]olicy of [n]eedlessly [h]arassing the Wilhelm family."  (Doc. # 94, at 8.)  The evidence to which Bradley directs this Court is an affidavit from Robert Mullins, a private investigator employed by Bradley's counsel, in which Mullins states that he has "investigated at least three incidents involving the Knox County College Township Fire Department and their involvement with [the] Wilhelm family."  (Doc. # 94, Ex. E, Mullins Aff., at 1 ¶¶ 1-2.)  Mullins provides a one-sentence description of the three incidents and states that in his opinion, there is a definite bias toward the Wilhelm family.  (Doc. # 94, Ex. E, Mullins Aff., at 1.)  But this spartan affidavit hardly suffices as evidence upon which a reasonable juror could find for Bradley.  The affidavit contains only blanket assertions and does not present facts permitting a reasonable inference of bias.  It is simply a conclusory statement of opinion.  As such, it is insufficient to create even a genuine issue of material fact and is not the conclusive evidence of a *Monell* policy, custom, or practice that Bradley intends it to be.  As he did with the Mount Vernon Defendants, then, Bradley has failed to identify any evidence pointing to an underlying policy, custom, or practice that caused the claimed constitutional deprivations.

---

assuming *arguendo* that the latter claim even exists as a viable cause of action–the Court notes that its analysis of the state counterpart claims applies to the potential federal claims for all Defendants throughout this Opinion and Order.

College Township–and by extension Baer, Samuell, and Dzik in their *official* capacities–therefore cannot be liable under § 1983 and are entitled to judgment as a matter of law on that count.

Momentarily setting aside the § 1983 claims against Defendants William Baer, James Samuell, and Richard Dzik in their individual capacities, the Court next turns to the state law claims against these individuals. All three assert that they are entitled to summary judgment on Bradley's claims of false arrest, malicious prosecution, and abuse of process. In regard to the first two claims, these defendants initially assert the defense of qualified immunity and then argue that even if not immune, the facts Bradley alleges do not present viable claims against them. The Court need not determine the applicability of the former argument, however, because all three claims fail under the latter argument. There is simply no factual basis that would permit a reasonable juror to conclude that Baer, Samuell, or Dzik arrested Bradley or were responsible for his subsequent prosecution so as to create liability under Bradley's theories of false arrest, malicious prosecution, or abuse of process. Baer, Samuell, and Dzik are therefore entitled to judgment as a matter of law on these three claims.

These three men are not, however, entitled to judgment as a matter of law on Bradley's intentional infliction of emotional distress claims. This claim is contingent on the assault and battery count, because without the predicate acts forming the basis for that count, there is nothing to constitute outrageous behavior to constitute the intentional infliction of emotional distress. As noted, Baer does not seek summary judgment on the assault and battery count. Further, this Court concludes that neither Samuell nor Dzik are entitled to summary judgment on this count.

16

Samuell and Dzik argue that summary judgment is warranted on Bradley's assault and battery count on the grounds that he has no actual knowledge that either man assaulted or battered him.  They quote Bradley's deposition testimony, in which he conceded that he "didn't see" Dzik push him and that he "didn't know" for certain whether Samuell pushed him, although Bradley stated that Samuell "probably did."  (Bradley Wilhelm Dep. at 94.)

Bradley responds to this argument by again pointing to the affidavit of Machael Hartsook, in which she states that she observed the seven individual defendants surround Bradley and that she "could see each and every one of them pushing and shoving Brad Wilhelm for several minutes."  (Doc. # 94, Ex. B, Hartsook Aff. at 3-4 ¶¶ 11, 14.)  Samuell and Dzik do not acknowledge the Hartsook affidavit in their reply memorandum, but instead again quote Bradley's deposition testimony.

Regardless of whether Bradley can recount exactly who pushed him for certain, a witness apparently can.  This Court's independent review of the Hartsook deposition transcript reveals that Hartsook's affidavit does not contradict her deposition testimony, in which she testified that three firemen encircled Bradley and pushed him.  (Hartsook Dep. at 83-83, 94.)  This creates a genuine issue of material fact that permits Bradley to survive summary judgment on his assault and battery claims and, by extension, on his § 1983 claims.

Bradley's intentional infliction of emotional distress claims against these individuals, like the intentional infliction of emotional distress claims against Jacobs and Glazier, present a much closer call.[5]  Samuell, and Dzik argue that a push or shove is insufficient as a matter of law, and

---

[5]  The Court notes that the individual College Defendants assert that they are entitled to immunity "[t]o the extent Plaintiff has alleged negligent infliction of emotional distress."  (Doc.

although they cite a state court of appeals case that found no outrageous conduct predicated upon

a push, they overlook that this is by necessity a fact-specific and context-specific inquiry.  A

push in one context may not be outrageous to rise to the level of the intentional tort, but a push in

the post-arrest context allegedly found here is.   Further, although Baer, Samuell, and Dzik assert

that Bradley fails to present sufficiently severe emotional distress proximately caused by their

conduct, they cite only a portion of his deposition testimony.  When read in context, Bradley's

deposition testimony provides that he treated with a psychologist and a psychiatrist for an

extended period, that he received counseling sometimes as often as three times a week, that he

was on medication for an inability to sleep, and that he was worried about the incident in general

*in addition to* his concerns about the charges against him and his convictions.  (Bradley Wilhelm

Dep. at 57-62.)  Thus, as noted, there is again just enough of a factual question so as to require

these claims to survive summary judgment.

The Court **GRANTS IN PART** and **DENIES IN PART** the College Defendants' motion

for summary judgment.  (Doc. # 74.)  College Township is entitled to judgment as a matter of

law on Bradley's § 1983 claim, as are Baer, Samuell, and Dzik in their official capacities.

Bradley's § 1983 claims against Baer, Samuell, and Dzik in their individual capacities remain

pending, as does the state law assault and battery counts and the intentional infliction of

---

# 74, at 27-28.)  In an exceptionally minimal response, Bradley asserts that he "should be
entitled to go on with his intentional infliction of emotional distress claim."  (Doc. # 94, at 12.)
As discussed earlier in footnote 2, *supra*, it is wholly unclear whether Plaintiffs actually intended
to assert a claim for the negligent infliction of emotional distress.  Bradley's focus on the
intentional tort and neglect of the negligence tort in his response supports a more narrow reading
of the Complaint or, under an expansive reading of the pleading, the memorandum in opposition
at best indicates an apparent abandonment of any negligent infliction of emotional distress claim.

emotional distress counts against these individuals.[6]

## V. The Knox County Defendants

The Knox County Defendants move for summary judgment on all claims against them. Beginning with the sole federal cause of action–the § 1983 claims–the Court recognizes that Plaintiffs have sued these defendants in both their official and individual capacities. The Court shall address each aspect of the § 1983 claims separately.

As noted above, a § 1983 claim against officers in their official capacities is a claim against the municipality for which they work. Thus, when Plaintiffs sue Carpenter, Rutherford, and Barber in their official capacities, they are suing the Knox County Sheriff's Department/Knox County.[7] Plaintiff's theory appears to be that the county incurs liability because the supervising officer on the scene, Carpenter, was unfit for duty. In summary fashion, they assert that Carpenter suffers from the mental condition of bipolar disorder, rendering him unfit for service, and that he previously beat an individual identified as Monte Elliot. (Doc. # 96, at 15-16.)

To satisfy their burden on this apparent failure to train/failure to supervise claim, Plaintiffs must demonstrate the existence of and impropriety of an involved policy. This is

---

[6] Alva Wilhelm previously dismissed his claims against the College Township Defendants. (Doc. # 72.) Although the dismissal purports to be under Fed. R. Civ. P. 41(a)(1)(ii), this Court accepts the dismissal with prejudice under Fed. R. Civ. P. 21. *See Letherer v. Alger Group, L.L.C.*, 328 F.3d 262, 266 (6th Cir. 2003).

[7] The caption of the Complaint includes Knox County Sheriff David Barber, but the pleading itself does not discuss him. (Doc. # 1.) To the extent that Plaintiffs intend to sue Barber in his official capacity, any pleading deficiency is immaterial because Plaintiffs have named the county/sheriff's department.

because the Sixth Circuit has explained:

> Municipalities are not ... liable for every misdeed of their employees and agents. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §§ 1983." [*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978).]  This circuit has stated that to satisfy the *Monell* requirements a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir.1987) (adopting the test articulated in *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)).

*Garner*, 8 F.3d at 363-64.  Thus, what constitutes a *Monell* policy or custom is of critical import to this case.  The United States Supreme Court has held:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. ... Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).  The Sixth Circuit has discussed this possibility:

> A city may also be liable, in narrow circumstances, for failure to train its officials, if that failure gives rise to a clearly foreseeable violation of constitutional rights reflecting deliberate indifference to them:
>
> > "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury."

*Sell v. City of Columbus*, 47 Fed. Appx. 685, 691-92, (6th Cir. 2002) (quoting *City of Canton,* 489 U.S. at 390 ) (footnotes omitted).  The ultimate focus "[i]n resolving the issue of a [municpality's] liability, ... must be on adequacy of the training program in relation to the tasks the particular officers must perform."  *City of Canton*, 489 U.S. at 390.

In making their argument, however, Plaintiffs fail to cite directly to any summary judgment evidence supporting their factual assertions.  Unlike in *Sell v. City of Columbus*, where a plaintiff survived summary judgment by asserting that the defendant city deliberately failed to supervise, train, and discipline its employees so that they could carry out their assigned duties in compliance with constitutional requirements, Plaintiffs here point to no facts supporting a policy linked to a constitutional violation.  *Id*., 47 Fed. Appx. at 694.  Although the Knox County Defendants' reply memorandum concedes that Carpenter was previously approved for disability leave for bipolar disorder, it also asserts that he has never been adjudged incompetent under Ohio Rev. Code § 2923.13(A)(5) as Plaintiffs assert he is.  (Doc. # 97, at 3-4.) Plaintiffs' have thus failed to direct this Court to any proper evidence supporting their factual contentions; although the defense concedes Carpenter's previous disability diagnosis, they do not concede that Carpenter previously assaulted another individual so as to put Barber on notice of an issue.

Absent evidence demonstrating the existence of a *Monell* policy, custom, or practice that would attach liability to Knox County, Knox County Sheriff's Department, or Knox County Sheriff David Barber, Carpenter, and Rutherford in their official capacities, Plaintiffs have certainly failed to connect a policy to these defendants and show that the particular injuries alleged were incurred because of the execution of that policy.  *Respondeat superior* cannot provide a basis for liability here.  *See Monell,* 436 U.S. at 691.  Knox County, the sheriff's

21

department, and the remaining Knox County Defendants in their official capacities are therefore

entitled to summary judgment on the § 1983 claims.

This leaves the § 1983 claim against Barber, Carpenter, and Rutherford in their

*individual* or *personal* capacities, as well as the state law claims.[8]  Because Barber cannot be

liable (under the federal claim or any of the state law claims) for events *in which he did not*

*participate*, the Court finds that Barber is entitled to judgment as a matter of law on all these

claims.

Carpenter and Rutherford concede that they were acting under color of state law, but

deny that they violated Alva and Bradley Wilhelm's constitutional rights.  Accordingly, these

defendants move for summary judgment on the § 1983 claims against them on the grounds that

they have qualified immunity and that no deprivations of any constitutional right occurred.

Carpenter, for example, argues that there is "little evidence" to support the allegations

that he unlawfully seized Alva and that he exercised excessive force against the man when

arresting Alva.  (Doc. # 78, at 8.)  It is undisputed that whether by accident or intent, Alva made

physical contact with Carpenter.  It is less clear to the Court whether the Knox County

Defendants are being melodramatic when they state that this "resulted in [Carpenter's] being

trapped between the door of the tractor and the door frame of the tractor."  (Doc. # 78, at 9.)  In

any event, Carpenter argues that this led to Alva's arrest for misdemeanor assault and that he

effectuated said arrest with reasonable force.

---

[8] As noted, it is unclear whether a claim against Barber actually exists.  Because the
parties proceed as if such a claim does exist–and given this Court's resolution of the claim–the
Court will overlook any pleading issue in this regard.

Similar to Carpenter, Rutherford also moves for summary judgment on the § 1983 claim against him.  This claim targets Rutherford's alleged conduct toward Bradley Wilhelm. Although not a model of clarity, Bradley's briefing and pleading appears to assert that Rutherford  violated the Fourth Amendment by falsely arresting Bradley and by using excessive force.

This Court begins with the basic tenets of qualified immunity.  This affirmative defense is meant to safeguard an official's proper decision making process and offers that party potential relief from frivolous suits.  *See D'Agastino v. City of Warren*, 75 Fed. Appx. 990, 993 (6th Cir. 2003).  The Sixth Circuit has explained that qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In addition to shielding officials from liability, qualified immunity may entitle the official to not stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  This principal directs courts to make a ruling on the issue of qualified immunity early in the proceedings, so that the costs and expenses of trial are avoided where the defense is dispositive.  *Id.*

The Supreme Court has instructed lower courts to use a distinct analysis to determine whether summary judgment based on qualified immunity is warranted.  In addressing the potential applicability of qualified immunity, a court follows a sequential inquiry: "First, the court considers whether, on the plaintiff's facts, there has there been a violation.  Second, the court considers whether that violation involved 'clearly established constitutional rights of which

23

a reasonable person would have known.' " *Hoover v. Radabaugh*, 307 F. 3d 460, 465 (6th Cir.

2002) (quoting *Dickerson v. McClelland*, 101 F. 3d 1151, 1158 (6th Cir. 1996)). *See also*

*Saucier*, 533 U.S. at 201.

      The doctrine of qualified immunity recognizes that an officer can be found to have

violated the constitution, but be granted immunity for *reasonable* mistakes as to the legality of

his or her action. *Saucier*, 533 U.S. at 206. The reasonableness of such mistakes is inherently

dependant upon the clarity of the legal constraints governing particular police conduct. The

contours of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right. *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635,

640 (1987)). Cognizant of this mandated inquiry, the Court shall proceed to analyze the two

threshold Fourth Amendment claims in this case: false arrest and excessive force.

      Addressing the false arrest component of the § 1983 claims first, the Court recognizes

that an arrest not supported by probable cause violates the Fourth Amendment. *Klien v. Long*,

275 F.3d 544, 549 (6th Cir. 2001) (citing *Donovan v. Thomas*, 105 F.3d 291, 297-298 (6th Cir.

1997)). In the context of a § 1983 claim for wrongful arrest, the foregoing rule requires a

plaintiff to prove that the arresting officer lacked probable cause to believe the suspect had

committed the charged crime. *Stemler v. City of Florence*, 126 F.3d 856, 871 (6th Cir. 1997).

Probable cause to make an arrest exists if, at the moment of the arrest, "the facts and

circumstances within [the officers'] knowledge and of which they had reasonably trustworthy

information were sufficient to warrant a prudent man in believing that the [arrestee] had

committed or was committing an offense." *Klein*, *supra* at 550 (citing *Donovan v. Thomas*,

*supra* at 298 (6th Cir. 1997)). Probable cause is assessed "from the perspective of a reasonable

officer on the scene, rather than with the 20/20 vision of hindsight," *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386 (1989)).

Thus, a "probable cause" determination requires a court to examine all the facts and circumstances within an officer's knowledge at the time of an arrest. *See Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000). The Sixth Circuit Court of Appeals has explained that, "in general, the existence of probable cause in a §1983 action presents a jury question, unless there is only one reasonable determination possible." *See Klein*, 275 F.3d at 550 (citing *Gardenshire*, 205 F.3d at 315). Therefore, the question before the Court is whether it would be clear, to a reasonable officer facing the specific factual situations before Carpenter and Rutherford, that there was not probable cause to arrest Alva or Bradley. If there is more than one reasonable determination possible, the matter is a jury question.

Guided by this standard, the Court concludes that a reasonable juror could only conclude that probable cause existed to support the arrests of both Alva and Bradley. Carpenter arrested Alva for assault in violation of Ohio Rev. Code § 2903.13(A), which prohibits knowingly causing or attempting to cause physical harm to another. Thus, although Alva describes his contact with Carpenter as an accident, a reasonable, prudent officer in Carpenter's situation would be justified in believing that a violation of the statute had occurred.

Similarly, a reasonable, prudent officer in Rutherford's situation would be justified in finding that probable cause existed to arrest Bradley. Rutherford concedes that he placed Bradley under arrest after arriving at the scene and being told that Bradley "had driven his tractor/lawn mower at several firefighters in a threatening manner." (Doc. # 78, at 12.) Although at first blush such a description of the events may not appear to present dire

25

circumstances, the Knox County Defendants explain in their reply memorandum that "[a] lava flow may not be fast, but reasonable people will get out of the way of one." (Doc. # 97, at 5.) In any event, setting the validity of the analogy aside, the Court recognizes that at a minimum there was probable cause to arrest Bradley for attempted assault on a firefighter under Ohio Rev. Code § 2903.13(A) and (C)(3).

Without much discussion, Bradley appears to argue, however obliquely, that Rutherford *perhaps* lacked the ability to arrest him because a violation of Ohio Rev. Code § 2903.13(A) is a misdemeanor and Rutherford did not observe the alleged actions constituting the offense. (Doc. # 95, at 12.) Ohio law generally permits officers to make a warrantless arrest for misdemeanors only when the offense is committed in their presence. *State v. Henderson*, 51 Ohio St. 3d 54, 56, 554 N.E.2d 104, 106 (1990). The Court notes that although initially charged with a misdemeanor, Bradley was ultimately charged with three counts of felony assault; Ohio Rev. Code § 2903.13(C)(3) makes it a fourth-degree felony to knowingly cause or attempt to cause physical harm to a firefighter.[9] But looking at just the initial charge against Bradley, the Court recognizes that the Sixth Circuit has held that (1) a defendant cannot be liable under § 1983 unless he or she violated one of a plaintiff's federal constitutional rights, and (2) a state right "as an alleged misdemeanant to be arrested only when the misdemeanor is committed in the presence of the arresting officer [is] not grounded in the federal constitution and will not support a § 1983 claim." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). The issue is whether

---

[9] Where the issue turns on whether an arrest for a state law offense was made without probable cause, reference to the language of the statute governing the offense, and to state court cases shedding light on the contours of the said offense, is appropriate. *See*, *e.g.*, *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1010-12 (6th Cir. 1999)

probable cause to arrest existed, not whether the arrest violated state law.  Accordingly, because probable cause to believe that a crime had occurred existed, Bradley's § 1983 false arrest claim under the Fourth Amendment must fail.

The extant question is thus whether Carpenter or Rutherford acted with excessive force. For purposes of the qualified immunity inquiry, the Court asks first whether Alva and Bradley have alleged a violation of a constitutionally protected right and, second, whether the right was clearly established at the time of the alleged violation.  *See D'Agastino*, 75 Fed. Appx. at 993. The Court begins with whether  it would be clear to a reasonable officer facing the specific factual situations before Carpenter and Rutherford that the force involved in effectuating the respective arrests of Alva or Bradley was excessive.  *See id*. at 994.

A determination of whether the force used to effect a seizure was unreasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ewolski v. City of Brunswick*, 287 F.3d 492, 507-08 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396).  *See also D'Agastino*, 75 Fed. Appx. at 994.  The "objective reasonableness standard" applied in this inquiry asks whether a reasonable officer would conclude that the level of force used was appropriate.  *Graham*, 490 U.S. at 396-97.  This standard balances the cost to the individual against the government's interest in effectuating a seizure; it contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case.  *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396 ).  The officer's subjective intentions are irrelevant to a

27

Fourth Amendment inquiry.  *Graham*, 490 U.S. at 397.  Generally, the use of force is contrary to

the Fourth Amendment if it is excessive under objective standards of reasonableness.  *Id.*  Thus,

the use of force involved here was objectively unreasonable if it would have been clear to a

reasonable officer in these situations that the level of force used against Alva or Bradley was

excessive.

But whether the use of force in the case of Alva or Bradley was unreasonable is a

material factual issue still in dispute.  Although he is apparently unable to recount his arrest and

post-arrest transport in much detail, Alva has produced Hartsook as a witness who states in her

affidavit that she "saw Deputy Carpenter violently swing open the tractor door, which struck

Alva Wilhelm on the left side of his head in the area of his ear."  (Doc. # 95, Ex. A, Hartsook

Aff. at 2 ¶ 7.)  Hartsook also states that she "then saw Deputy Carpenter violently pull Mr.

Wilhelm behind him and take him to his sheriff's cruiser."  (Doc. # 95, Ex. A, Hartsook Aff. at 3

¶ 9.)  This description echoes both Alva's undetailed testimony, as well as Bradley's account of

the incident.  What none of the three descriptions provide is an indication that the force

Carpenter allegedly used was reasonable.[10]  Although cognizant of the lack of much detail in this

evidence, the Court recognizes that said evidence nonetheless presents a factual issue that

renders the application of qualified immunity impossible here.  In other words, the evidence

presents a scenario in which the force used by Carpenter may or may not have been appropriate

and, resolving all inferences in favor of the non-moving party, the Court must conclude that

---

[10]  The parties also debate whether Carpenter applied excessive force in handcuffing Alva
and in allegedly shoving him into the police cruiser.  Because Alva's claim survives summary
judgment based on the incidents discussed in the main text above, this Court need not parse out
whether the handcuffing and cruiser shove could alone support the claim.

Alva's claim survives summary judgment.

The parties also disagree over the correct interpretation of the events constituting Bradley's post-handcuffing circumstances.  Bradley, supported by his witness Hartsook, presents a scenario in which he was repeatedly pushed around a circle by seven individuals, including Carpenter and Rutherford.  But these two officers in their motion for summary judgment describe the event as follows:

> As to Lieutenant Rutherford, the testimony is that after [Bradley] was handcuffed by someone, he was passed along to Lieutenant Rutherford, who took him and placed him in his police cruiser.  The most "force" alleged is that sergeant Carpenter and Lieutenant Rutherford "pushed" or "shoved" the Plaintiffs in the direction of the cruisers. ... [A] random push or shove does not make an excessive force claim.

(Doc. # 74, at 16-17.). Such a dispute over what happened make it impossible for this Court to analyze whether the facts present reasonable conduct.  The Court cannot determine in this case, without a factual resolution, whether the specific circumstances of Bradley's post-arrest handling would have signaled to a reasonable officer that the force used against him was unreasonable.

In sum, then, there are unresolved factual disputes as to what transpired during and after the arrests at issue.  Such facts are not only material to the excessive force claim, but also to determining whether the state actors involved can escape further proceedings in this litigation by invoking qualified immunity.  Based upon the record, the Court cannot find–without impermissibly crediting the defense version of the facts–that Carpenter and Rutherford's conduct was objectively reasonable under the circumstances involved.  This conclusion finds support in the Sixth Circuit's caution that "[s]ummary judgement on a claim of excessive force is inappropriate where the parties dispute virtually all of the essential facts surrounding the

29

excessive force claim because it impossible to determine whether the force used was reasonable without choosing between the parties sharply different factual accounts." *Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir. 1991).

Accordingly, for purposes of the qualified immunity ruling, the Court concludes that both Alva and Bradley have sufficiently alleged facts to establish a violation of their rights.  Further, the United States Supreme Court clearly established prior to these events that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. *See, e.g., Graham*, 490 U.S. at 394-95.  It was well settled at the time of these events that the use of force must be reasonable; if no force was required, then no force was permitted.  *See id*. at 395; *Monday v. Oullette*, 118 F.3d 1099, 1104 (6th Cir. 1997).  *See also Adams v. Metiva,* 31 F.3d 375, 384-85 (6th Cir.1994).  Necessarily construing all factual inferences in Plaintiffs' favor, the Court must conclude that Alva and Bradley has alleged a genuine issue of material fact supporting their theories of unreasonable force.  Because their right against unreasonable force was clearly established in the law at the time of the alleged violations, granting summary judgment on the § 1983 claims for Carpenter and Rutherford in their individual capacities would be improper.

In regard to the various state law claims against them, Carpenter and Rutherford assert that they are entitled to state-law immunity.  Plaintiffs of course disagree, pointing to the exemption to immunity embodied in Ohio Rev. Code § 2744.03(A)(6)(b) for an "employee's acts or omissions [done] with malicious purpose, in bad faith, or in a wanton or reckless manner."  In their reply, Carpenter and Rutherford do not address § 2744.03(A)(6)(b), but instead repeat their prior argument and conclude that "none of the plaintiffs present a picture of

30

anything other than competent police work." (Doc. # 97, at 5.)

It is unclear how, in Bradley's case, encircling a handcuffed individual and repeatedly shoving that subdued individual around constitutes competent police work. It is also unclear how competent police work would warrant slamming a door into Alva's head if the facts did not justify such an act as a necessary and proportionate response. What is clear is that such conduct, if true, would constitute acts done with a malicious purpose, in bad faith, or in a wanton or reckless manner to paraphrase the § 2744.03(A)(6)(b) immunity exception. Necessarily construing the facts in Plaintiffs' favor, this Court concludes that the § 2744.03(A)(6)(b) exception to immunity applies to Plaintiffs' assault and battery and intentional infliction of emotional distress claims.

Further, the Court need not consider the application of such immunity to the other state law claims. Plaintiffs' state law claims for false arrest fail for the same reasons discussed in regard to the false arrest component of their federal § 1983 claim–i.e., because there was probable cause for their respective arrests, there is no unlawful detention. Carpenter and Rutherford are also entitled to judgment as a matter of law on Plaintiffs' state law claims of malicious prosecution and abuse of process, because there is simply no evidence that either officer acted with malice in instituting or continuing the prosecutions (which also did not lack probable cause) or perverted the consequent legal proceedings in an attempt to accomplish an ulterior purpose for which the criminal process was not designed. All three claims fail on the facts, not due to the application of immunity.

But the absence of immunity does not invariably mean that Plaintiffs are entitled to survive summary judgment on their claims for assault and battery and the intentional infliction of

31

emotional distress.  In regard to the assault and battery count, the Court concludes that a reasonable juror could find for Plaintiffs, if believed, for the same reasons discussed above in regard to the excessive force components of their § 1983 claims.  But in regard to the intentional infliction of emotional distress claims, the Court finds that the facts mandate summary judgment for Carpenter in regard to Alva, but not in regard to Bradley.

Although perhaps excessive–and even if done in bad faith–the amount of force Carpenter allegedly used on Alva does not constitute conduct so extreme and outrageous as to go beyond all possible bounds of decency so that it is outrageous and utterly intolerable in a civilized community.  The conduct arguably presents a factual scenario in which an officer overreacted, but not in such a fashion so as to cross into indecent misconduct.  In contrast, the alleged actions of Carpenter and Rutherford in regard to Bradley, if true, would cross such a barrier.  These circumstances present a scenario in which a handcuffed individual is assaulted not by an officer in a potentially misguided course of protecting himself, but by officers engaged in the abuse of the subdued for mere sport.  The average citizen on the street would find such abuse of power, conducted under the guise of governmental authority, outrageous.  Accordingly, while Alva's claim for the intentional infliction of emotional distress does not survive summary judgment, Bradley's claim does.

The Court therefore **GRANTS IN PART** and **DENIES IN PART** the Knox County Defendants' motion for summary judgment.  (Doc. # 78.)  The § 1983 claims against Carpenter and Rutherford in their individual capacities remain pending, as does Plaintiffs' assault and battery claims and Bradley's claim for the intentional infliction of emotional distress.  Plaintiffs' other claims do not survive summary judgment.

32

## VI.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment filed by the Mount Vernon Defendants (Doc. # 54), the motion for summary judgment filed by the College Defendants (Doc. # 74), and the motion for summary judgment filed by the Knox County Defendants (Doc. # 78).  Those claims that survive summary judgment as described herein shall proceed to trial.

**IT IS SO ORDERED.**

/s/   Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE